COURT OF APPEALS
DECISION
DATED AND FILED

June 29, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1246-CR**

Cir. Ct. No. 2017CF1028

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

GUILLERMO MENDOZA,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Brown County: TIMOTHY A. HINKFUSS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Guillermo Mendoza appeals a judgment convicting him of incest and first-degree sexual assault of a child. Mendoza first argues that

the circuit court erred by denying his motion for mistrial. That motion was based on the alleged admission of other acts evidence that occurred when the prosecutor asked Mendoza about his estranged wife living in Mexico. We conclude the circuit court properly exercised its discretion in this regard.

¶2 Mendoza also argues that the prosecutor engaged in improper questioning by repeatedly asking Mendoza whether a "good dad" would abuse his children. While we agree with Mendoza that this line of questioning was improper, we conclude the error was harmless because Mendoza categorically denied engaging in the subject conduct when responding to each question. Finally, we reject Mendoza's assertion that he is entitled to a new trial in the interest of justice. Accordingly, we affirm.

## BACKGROUND

¶3 The State charged Mendoza with incest and first-degree sexual assault of a child, and Mendoza contested those charges at a jury trial. Aimee, Mendoza's longtime girlfriend, testified that she lived with Mendoza from 2004 until they separated in 2016.[1] During that time, Mendoza and Aimee had four children together. After their separation, Mendoza continued to see his children occasionally. As relevant here, the couple's children visited Mendoza on a weekend in late April 2017. A few days after returning to Aimee's care, one of the children, Gabriella, informed her mother that Mendoza had "kissed her on the mouth … and touched her down there." Gabriella, who was eight years old at the

---

[1] We refer to the victim and her family members using pseudonyms, pursuant to the policy underlying WIS. STAT. RULE 809.86 (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

time of trial, testified that Mendoza had touched her private parts while she was lying in bed with Mendoza and her sister. Five additional witness—two police officers, a child forensic interviewer, a DNA analyst, and a sexual assault nurse examiner—were also called to testify by the State.

¶4 Mendoza testified in his own defense and denied touching Gabriella's vaginal area. He testified that he took off Gabriella's leggings because they were wet from Gabriella bathing her sister. According to Mendoza, Gabriella put on dry clothes, and then Mendoza and his daughters all went to bed together. Gabriella, however, was upset when she went to bed because she did not want to change her clothes.

¶5 At the conclusion of the trial, the jury found Mendoza guilty on both counts. Mendoza now appeals, arguing he is entitled to a new trial because the circuit court erroneously decided certain evidentiary rulings. Additional facts are provided below.

**DISCUSSION**

*I. Cross-examination regarding Mendoza's estranged wife*

¶6 During Mendoza's direct examination, Mendoza described how Aimee wanted to return to school and how he grew concerned about her ability to take care of their children and house while attending school. Mendoza testified that Aimee's desire to return to school ultimately led to their break up. In response, the prosecutor began Mendoza's cross-examination by challenging that testimony, asking whether some of the couple's problems stemmed from the fact that Mendoza was currently married to another woman. Mendoza testified that he had a wife in Mexico, but that they had been estranged for approximately eighteen

years, and she had refused to grant him a divorce. Defense counsel then objected, on relevancy grounds, to the prosecutor's follow-up question about whether Mendoza had children with his wife. The circuit court sustained the objection.

¶7 During the next break in the proceedings, defense counsel moved for a mistrial on the basis that the prosecutor's questioning about Mendoza having a wife constituted impermissible other acts evidence, insomuch as adultery remains a crime. Defense counsel specifically stated he was not seeking a cautionary instruction because he did not want to draw attention to the testimony, but rather that he was seeking a mistrial. The prosecutor responded that the questioning was permissible because the defense had opened the door by questioning Mendoza about why he and Aimee had broken up. The circuit court agreed with the State, and it denied the mistrial motion.

¶8 On appeal, Mendoza contends the circuit court erred by refusing to grant a mistrial, arguing that the State's questioning constituted an exploration of improper other acts evidence that was aimed at impugning Mendoza's character.[2] We review a decision denying a motion for a mistrial for an erroneous exercise of discretion. *State v. Pirtle*, 2011 WI App 89, ¶25, 334 Wis. 2d 211, 799 N.W.2d 492.

---

[2] Mendoza suggests that the State's purpose for eliciting testimony regarding his estranged wife was unclear and did not serve a proper purpose under WIS. STAT. § 904.04(2). We disagree. The State signaled its purpose for asking questions about Mendoza's estranged wife when the prosecutor told Mendoza, "I have some questions about what you've been talking about how you and [Aimee] broke up." Thus, the State elicited Mendoza's testimony for the purpose of impeachment, and not as evidence of Mendoza's character or that he acted in conformity with such character. *Cf. State v. Shillcutt*, 116 Wis. 2d 227, 236, 341 N.W.2d 716 (Ct. App. 1983) (concluding the evidence was not offered "to prove the character of a person in order to show that he [or she] acted in conformity therewith," but rather to establish background regarding the defendant's relationship with a prosecution witness). As we explain herein, impeachment evidence both has a proper purpose and is relevant to a witness's credibility.

¶9     Here, we conclude the circuit court reasonably determined that the defense had opened the door to the inquiry regarding Mendoza's wife by asking about the reason why Mendoza and Aimee broke up.  As the State notes, cross-examination is permitted on "any matter relevant to any issue in the case, including credibility."  *See* WIS. STAT. § 906.11(2).  The court could reasonably view the testimony elicited on cross-examination as impeaching Mendoza, thereby undercutting his credibility.  While Mendoza takes issue with the probative value of the inference that his long-estranged wife contributed to his breakup with Aimee, the relative weight given to that inference does not alter its nature as impeachment testimony.  Moreover, the probative value of impeaching Mendoza's credibility in this line of questioning was not substantially outweighed by any unfair prejudicial effect that it may have had on the jury.  *See* WIS. STAT. § 904.03.  The State's questions did not explicitly suggest or emphasize any wrongful conduct by Mendoza and were limited to rebutting Mendoza's explanation for why he and Aimee broke up.  Because Mendoza's relationship with his wife was remote—eighteen years ago—and because the State's questions specifically addressed Mendoza's explanation for why he and Aimee broke up, we cannot conclude that the State's limited questions on this subject were unfairly prejudicial.  In all, the court did not erroneously exercise its discretion in denying Mendoza's mistrial motion.

## II. *Cross-examination regarding whether Mendoza was a "good dad"*

¶10     More concerning is the rhetorical line of inquiry in which the prosecutor questioned Mendoza regarding what a "good dad" would do or refrain from doing.  The prosecutor began innocuously enough by asking, "Do you think you're a good dad?"  Mendoza replied, "Thank God, I think so, yes."  After a few additional questions, the prosecutor continued, "Do you think it's the right thing as

a dad when you got into bed with the two daughters?" The prosecutor repeated this line of questioning at several points during the cross-examination—e.g., "Do you think it was the right thing to do when you put your hand under [Gabriella's] underwear in bed?" and "Do you think it would be doing the right thing, being a good dad and protector, to continue to rub your daughter's vagina when she's saying stop?"

¶11     This type of questioning continued until defense counsel eventually objected, arguing that the prosecutor was asking "hypothetical questions of a lay witness of what a good dad is" and that "the State should stick to the facts." The circuit court overruled the objection, and the prosecutor asked one more question along these lines: "[D]o you think it's being a good dad telling a little girl not to tell [her] mom about a touching to the vagina?" During closing argument, the prosecutor obliquely referred to this line of questioning, arguing that Mendoza "failed miserably to do the right thing as a dad or a father."

¶12     We agree with Mendoza that this line of inquiry was improper.[3] Mendoza's opinion about what makes a "good dad" was irrelevant and unhelpful to the jury because it was unrelated to any of the issues in the case—namely, whether Mendoza committed the charged offenses. Nor were the questions intended to elicit testimony that would have affected the jury's assessment of Mendoza's credibility. Rather, as Mendoza notes, his opinion "had nothing to do with anything other than the rhetorical point the prosecutor wanted to make: that

---

[3] The State suggests that Mendoza failed to adequately object to the "good dad" questions at trial, thereby waiving the issue on appeal. We recognize that defense counsel's eventual objection to this line of questioning—improper lay opinion testimony—appears less apt than a straightforward objection to a lack of relevancy. In any event, we agree with Mendoza that his trial counsel sufficiently objected to the general relevance of this line of testimony, thereby preserving appellate review of the propriety of the "good dad" line of questioning.

Mendoza was not a good father." Indeed, as he also observes, "the State gives no elaboration for *how* [the questions] would have any bearing on Mendoza's 'credibility.'"

¶13 Nonetheless, an evidentiary ruling is reversible only if it affects the substantial rights of a party. *State v. Monahan*, 2018 WI 80, ¶33, 383 Wis. 2d 100, 913 N.W.2d 894. An error is harmless if the party benefitted by the error shows beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *Id.*

¶14 In this instance, although the State's questioning called for irrelevant testimony, Mendoza's responses were calibrated to respond to the State's implied premise: that Mendoza had actually committed the alleged acts. Each time one of the improper "good dad" questions was asked, Mendoza responded, "I didn't do it," or some similar, unequivocal denial. Mendoza's steadfast denials that he had engaged in any improper conduct effectively cured any realistic prejudice from this irrelevant line of questioning. They did so because Mendoza's denials reoriented the jury to the actual issues in the case, they communicated to the jury that the questions relied upon false premises, and they prevented the matter from becoming a contest about what a "good dad" would or would not do.[4] In these regards, we further note that the "good dad" questions all related to the alleged sexual assaults, which never prompted Mendoza to opine on what a "good dad"

---

[4] Mendoza argues that the compound nature of the prosecutor's questions—in that they combined references to Mendoza's alleged misconduct with his opinions regarding being a "good dad"—highlights their inherent prejudice to him. While we understand Mendoza's general concern in this regard, the fact that Mendoza's answers to these questions consistently and only addressed his never having performed the alleged acts militates in favor of our harmless error analysis. We conclude as such because, as explained above, Mendoza's responses made clear to the jury that Mendoza was rejecting the factual premise of him having committed the alleged acts.

does generally. Under these circumstances, both before and after this line of questioning, the case remained largely contingent on whose version of the events that night the jury believed—Gabriella's or Mendoza's.

*III. New trial in the interest of justice*

¶15     Finally, Mendoza argues he is entitled to a new trial in the interest of justice under WIS. STAT. § 752.35. We use our statutory power of discretionary reversal only in exceptional cases. *State v. Camerson*, 2016 WI App 54, ¶31, 370 Wis. 2d 661, 885 N.W.2d 611. We have rejected Mendoza's arguments on their merits, and we do not divine from his arguments any other basis that would justify the exercise of our discretionary reversal power.

    *By the Court.*—Judgment affirmed.

    This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.